IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TINA SPAGNOLA,

    Plaintiff,

    v.

MICHAEL ASTRUE, Commissioner of
Social Security,

    Defendant.

NO. 09-cv-396-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 31) of Magistrate Judge Philip M. Frazier recommending that the Court affirm the Commissioner of Social Security's decision to deny plaintiff Tina Spagnola's application for supplemental security income ("SSI"). Spagnola has objected to the Report (Doc. 32), and the Commissioner has responded to her objection (Doc. 33).

### I.    Report and Recommendation Review Standard

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

The Court will affirm the Commissioner's decision if it is supported by substantial evidence and contains no error of law. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *see* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Clifford*, 227 F.3d at 869 (internal quotations and citation omitted). When it decides whether substantial evidence supports a decision, the Court does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner. *Id.*

## II. Background

At the time of the Spagnola's application for benefits, she was a 44-year-old woman with an eleventh grade education and was working on her GED. She had worked in the past as a nursing home attendant, telemarketer, janitor, assistant manager, inventory specialist, materials handler, screen printer and food service worker. She suffers from polysubstance dependence, personality disorder, chronic obstructive pulmonary disease, and degenerative joint disease of the left shoulder. Spagnola applied for SSI on March 14, 2006, alleging she is disabled because of the foregoing mental and physical impairments. Spagnola did not engage in substantial gainful activity after that date.

The claim made its way to an administrative law judge ("ALJ"), who conducted the five-step analysis applicable to the determination of whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a). The ALJ found that Spagnola was not employed and had not engaged in substantial gainful activity since her SSI application and that Spagnola's impairments were severe, clearing the first two steps of the five-step inquiry. The ALJ further found that Spagnola's condition did not meet or equal any of the impairments listed in the relevant regulations, and moved on to the fourth step – assessing Spagnola's residual functional capacity ("RFC") to determine whether she could perform her past relevant work. The ALJ found, among other things, that Spagnola was able "to understand, carry out, and remember simple instructions as required in the performance of unskilled work and could have occasional interaction with supervisors,

coworkers, and the public in a setting without stringent speed or production requirements." R. 75. The ALJ concluded that Spagnola was unable to perform her past relevant work as a nurse's aid and a stock clerk/material handler, which are classified as medium or heavy in exertional demands.

The dispute in this case arises over whether Spagnola satisfied the fifth step of the inquiry – whether she has the RFC to adjust to other work in light of her age, education and experience. The ALJ found that Spagnola could perform a limited range of light, unskilled work which was available in significant numbers in the national economy in such positions as cleaner, housekeeper, quality control and office helper.

In determining Spagnola's mental RFC and her ability to perform other work, the ALJ gave significant weight to the findings of examining licensed psychologist Harry J. Deppe, Ph.D., who found that Spagnola's Global Assessment of Functioning Scale ("GAF") score was 60 (on the borderline between mild and moderate symptoms or moderate difficulty in social, occupational or school functioning) and that her impairments caused her to be able to perform certain work related activities at the "only fair" or "fair" level. The ALJ also gave significantly reduced weight to the assessment of treating physician's assistant Mohamed Elsamahi, Ph.D., because she found it unreliable in light of the fact that parts of it were inconsistent with other evidence or unsupported by the record. In her opinion, the ALJ cited examples of Dr. Elsamahi's inconsistent or unsupported conclusions.

The Appeals Council denied review of the ALJ's decision, leaving that decision as the Commissioner's final decision in this case. *See Schmidt v. Astrue,* 496 F.3d 833, 841 (7th Cir. 2007).

**III.    The Report and Objections**

The Report makes three main findings:

- the ALJ's assessment of Spagnola's mental RFC as able to perform a limited range of unskilled work was consistent with Dr. Deppe's assessment that her GAF score was 60 and that she was able to perform certain work related activities at the "only fair" or "fair" level;

- the ALJ considered the proper factors and adequately explained her decision to give significantly reduced weight to the opinion of Dr. Elsamahi, who is not an "acceptable medical source" under SSR 06-03p and therefore not a "treating source" under 20 C.F.R. § 416.902; and

- the ALJ properly considered the testimony of Amy Copeland, a non-medical source, who is a relative with whom Spagnola lived for the month before the hearing.

Spagnola first states a general objection to the Report in its entirety. Such an objection is insufficient in that it is unsupported by any factual or legal argument. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (stating that perfunctory, underdeveloped and unsupported arguments are waived). In addition, Spagnola makes several specific objections:

- the ALJ's mental RFC finding is unsupported;

- the hypothetical question the ALJ posed to the vocational expert ("VE") did not reflect all of the limitations reflected in Dr. Deppe's opinion; and

- the ALJ erroneously rejected Dr. Elsamahi's opinion.

The Court will review these issues *de novo*.

**IV.    Analysis**

The Court need not review the detailed, undisputed background as set forth in the ALJ's decision and the Report. It proceeds directly to the matters at issue in this case.

    A.    <u>Mental RFC</u>

A claimant's RFC is the most she can still do despite her medically determinable

physical and mental impairments. 20 C.F.R. § 416.945(a). The ALJ must determine a claimant's RFC based on all the relevant evidence in the record, including evidence from acceptable medical and other sources. *Id.* Spagnola argues that the mental component of her RFC is inconsistent with Dr. Deppe's assessment of the impact of her mental impairments.

Here, the ALJ gave significant weight to the evidence from Dr. Deppe, an examining psychologist. Dr. Deppe found Spagnola's impairments had the following effects on her work-related activity:

1. Ability to relate to others, including fellow workers and supervisors: **Only fair.**

2. Ability to understand and follow simple instructions: **Fair.**

3. Ability to maintain attention required to perform simple, repetitive tasks: **Fair.**

4. Ability to withstand the stress and pressures associated with a day-to-day work activity: **Fair.**

Additionally, Dr. Deppe noted that at the time of his evaluation of Spagnola, she was working toward getting her GED, had a fair relationship with her siblings and mother, had a few friends, had no problem getting along with her coworkers at her last job, had no difficulty staying on task during the evaluation, and was currently working as a dishwasher. As noted above, Dr. Deppe concluded from his evaluation that Spagnola was able "to understand, carry out, and remember simple instructions as required in the performance of unskilled work and could have occasional interaction with supervisors, coworkers, and the public in a setting without stringent speed or production requirements." R. 75. Spagnola contends the ALJ's conclusion is not supported by Dr. Deppe's opinion of her "fair" and "only fair" abilities.

The ALJ's conclusion as to Spagnola's RFC is supported by Dr. Deppe's opinion. Fair ability does not necessarily connote a lack of ability or a marked impairment. On the contrary,

the American Heritage Dictionary of the English Language defines "fair" as "moderately good" or "mildly satisfying." *American Heritage Dictionary of the English Language* 471 (1975). In light of Spagnola's GAF score of 60 and Dr. Deppe's notes from Spagnola's evaluation, it was not an impermissible leap for the ALJ to conclude that Dr. Deppe's "fair" or "only fair" ability ratings indicate Spagnola has the listed work-related abilities to some degree. The ALJ's RFC appropriately reflects those "fair" abilities by limiting her RFC to unskilled work with occasional personal interaction and without the stress and pressure caused by stringent speed or production requirements that go beyond normal day-to-day work activity. *Compare Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) (problems with memory, concentration, or mood swings were not reflected in RFC limitations to "simple, unskilled tasks"). The ALJ's conclusion is supported by Dr. Deppe's opinion, which a reasonable person would accept as adequate to support her RFC conclusion. Therefore, Court has no reason to find fault with it.

    B.    <u>Questions to the VE</u>

Spagnola argues that the specific limitations found in Dr. Deppe's report – her "fair" or "only fair" abilities – should have been included in the questions the ALJ posed to the VE. Where the ALJ poses hypothetical questions to a VE about the number of jobs available in the national economy for a worker with certain limitations, she must include in her hypothetical questions all limitations supported by the medical evidence in the record. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). If the ALJ's hypothetical question incorporated the claimant's limitations, the VE's response will generally support the ALJ's conclusion. *See Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).

    Here, the ALJ asked the VE:

All right, please assume a person of the claimant's age, education, and work

> experience who can perform light work, and by that I mean 20 pounds
> occasionally, 10 pounds frequently; stand and walk six hours a day, sit [too].
> This individual should work in a temperature-controlled environment,
> temperature and humidity-controlled environment; should have only occasional
> exposure to respiratory irritants. . . . Occasionally reach overhead with the left
> upper extremity. This individual can perform unskilled work. This individual
> can tolerate occasional interaction with supervisors, co-workers, and the public.
> She can perform work without stringent speed or [production] requirements. The
> past work would be ruled out. Would there be other jobs in significant numbers?

R. 123.

This hypothetical question adequately incorporates all limitations supported by the record. As noted above, the limitations supported by Dr. Deppe's opinion are incorporated into the requirement of unskilled work with occasional personal interaction and without the stress and pressure caused by stringent speed or production requirements that go beyond normal day-to-day work activity. These limitations were included in the hypothetical question the ALJ asked the VE. Spagnola has pointed to no additional limitation that should have been included in the ALJ's hypothetical question.[1] Her conclusion based on the VE's response that there were significant jobs available in the region in this hypothetical situation was therefore based on substantial evidence and should not be overturned.

Spagnola cites numerous cases where mental limitations found by the ALJ were not incorporated into the ALJ's questions to the VE. *See, e.g., Stewart*, 561 F.3d at 684-85 (problems with concentration, persistence, and pace were not reflected in question describing limitation to "simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Young v. Barnhart*, 362 F.3d 995, 1002-03 (7th Cir. 2004) (problems accepting instruction, responding appropriately to criticism from supervisors, thinking

---

[1]As explained later, the ALJ appropriately discounted limitations that might have arisen from Dr. Elsamahi's opinions.

7

independently, and setting realistic goals; impulsivity, poor social judgment, and interpersonal difficulties were not reflected in limitation to "simple, routine, repetitive, low stress work with limited contact with coworkers and the public"). These cases are unhelpful. In each of those cases, the mental limitations were not reflected in the ALJ's question, as they were here. The Court is well aware that hypothetical questions expressing limitations to "simple tasks" cannot account for broader mental impairments, *see Stewart*, 561 F.3d at 685, but that is not what occurred in the case at bar where the RFC and the hypothetical question based on it reflected the medical evidence.

      C.      <u>Dr. Elsamahi's Opinion</u>

Spagnola faults the ALJ with finding Dr. Elsamahi's assessment unreliable and giving it significantly reduced weight in determining Spagnola's RFC.

As a physician's assistant, Dr. Elsamahi is not an "acceptable medical source" under SSR 06-03p. Therefore, he cannot give a medical opinion, *see* 20 C.F.R. §§ 416.913(a) & 416.927(a)(2), and is not a "treating source," *see* 20 C.F.R. § 416.902, whose opinion may be entitled to controlling weight, *see* 20 C.F.R. § 416.927(d)(2). *See, generally,* SSR 06-03p. Instead, Dr. Elsamahi is considered an "other source," *see* 20 C.F.R. § 416.913(d)(1), whose opinion must be considered to determine the severity of an impairment and its impact on the claimant's ability to work. *See* 20 C.F.R. § 416.913(d) When deciding the weight to be given to medical evidence from "other sources," the Court should consider the same factors it uses to evaluate medical evidence from "acceptable medical sources" such as, for example:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;

- How well the source explains the opinion;

- Whether the source has a specialty or area of expertise related to the individual's impairment(s); and

- Any other factors that tend to support or refute the opinion.

SSR 06-03p.

In this case, the ALJ considered the appropriate factors and adequately explained her decision to find Dr. Elsamahi's opinion unreliable and to give it significantly reduced weight. She noted that Dr. Elsamahi was not a licensed psychiatrist despite his purporting to administer a psychiatric evaluation, and she listed his credentials, none of which evidence any specialty in psychology or psychiatry. R. 78. She noted that his records of Spagnola's symptoms at a May 2006 visit (e.g., hallucinations) were inconsistent with Dr. Deppe's records from a visit by Spagnola only a month later, and that some of his diagnoses from the May 2006 visit were not supported by evidence (e.g., agoraphobia, obsessive compulsive disorder). R. 79. She notes that Dr. Elsamahi's June 2006 diagnosis of bipolar disorder occurred after Dr. Elsamahi had only been treating her for a month and where her record indicated no history of bipolar disorder. R. 79. The ALJ also took great pains to describe how parts of Dr. Elsamahi's May 15, 2007, assessment of Spagnola's mental impairment was unsupported by his own records, by documentary evidence or by Spagnola's testimony and was inconsistent with the opinion of Dr. Deppe, an "acceptable medical source." R. 82. Because of these inconsistencies, the ALJ gave Dr. Elsamahi's testimony significantly reduced weight.

The ALJ's explanation as to why she gave more weight to Dr. Deppe's opinion than to Dr. Elsamahi's was adequate to justify the decision. Although it is true that "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable

medical source' if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion," SSR 06-03p, that situation does not exist in the case at bar, and the ALJ appropriately weighed the evidence.

**V.     Conclusion**

The Court has reviewed the remainder of the Report for clear error and finds none. For the foregoing reasons, the Court **ADOPTS** the Report (Doc. 31) as **SUPPLEMENTED** by this order, **AFFIRMS** the Commissioner's final decision to deny Spagnola's application for supplemental security income and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:  August 22, 2011**

> s/ J. Phil Gilbert
> **J. PHIL GILBERT**
> **DISTRICT JUDGE**